at Al, Defendants Accounts, arguing on behalf of Accounts, Mr. Michael J. Salvey. Arguing on behalf of Applebees, Mr. Robert T. O'Donnell. Mr. Salvey, you may proceed. Thank you. Mr.  Salvey. Good morning, Justices. Good morning. Mr. O'Donnell. Could I interrupt you? Of course. This was a judgment on the pleadings, is that correct? Yes. Did the pleadings include the assignment? The pleadings included allegations of the assignment. The assignment in and of itself was something that was admitted by the party. So it's in the record, but it wasn't part of the pleadings? Was it incorporated or attached to the pleadings? I confess to it, Justice. I'm not sure right off the top of my head. I don't think, though, that the terms of the assignment were something that were contested either at the trial court or with you. When you say the terms of the assessment, you mean what it says? Yeah, because the assignment expressly said it's the intent of the SNR to transfer the membership interest to GMNK. And that was one of the things I was going to address. Okay. Did the assignment make any It did not expressly incorporate the operating agreement, however, pursuant to the LLC Act, whether or not the assignment had the effect of transferring the membership interest depended in part on the terms of the operating agreement. And the appellee claims that the LLC Act filled in some gaps. Yes. What gaps were being filled in? There were no gaps. Well, if that's the case, then is it your position that the argument is wrong because the LLC requires unanimous vote as opposed to the operational agreement that provided for 67 or 66.2 thirds or whatever? That's an excellent question. And the answer is that the LLC Act provides that the parties could, in the operating agreement, determine the terms by which and whether the membership interest can be transferred. In this particular case, our position is that the operating agreement as a matter of law clearly demonstrated that the membership interest could be transferred to an exclusive group of people called a permitted transferee. The parties agree that my client, GMAK, was a permitted transferee as defined by the operating agreement. But they disagreed that your position was, they disagreed with your position that the other members had to agree to the membership rights being transferred. Their position, I believe, and I hope that I'm answering your question, Justice McClaren, their position was that there had to be consent of the other members in order for this transfer to take place. However, in response to that, we cited the operating agreement, which provides, and I quote, it says, now keep in mind as I read this, please, that the defined, the term interest means a member, membership interest. I want to get it just right. The defined term interest shall mean, this is the operating agreement, interest shall mean the ownership interest of a member in the company. Not a distributional interest, not that limited distributional interest. An interest is the ownership interest in the company, a membership's interest. Then we read the third sentence in section, the beginning of section six. This is the appendix, page 51. It says, any member may, without the consent of the other members, transfer part or all of his, her, or its interest to a permitted transfer. Interest, again, meaning, shall mean the ownership interest of a member. Now, in the... So does that then mean that it is their contention that it was a permitted transfer, but there was an additional condition, and that was, is that they had to agree? Because it's a permitted transfer, really. They would say there had to be the consent of the other members. We say that this provision, and, you know, I say we say, I mean, that's what the provision says. It says you don't need the consent of the other members. Now, Justice, if you look at the first part of section six, because their position basically is, look, the only thing you got was a distributional interest, but that's not what section six says. In the introductory sentences, section six says, except as otherwise provided in disagreement, no member may transfer all or any portion of his, her, or its interest without the affirmative vote of the members. So that alone supports the appellee's position, because it says you got to get the approval of the other members. That's fine. Now, keep in mind, too, they're talking about the voting members, and how do they refer to the voting members? They refer to their interest as an interest, not a distributional interest. They refer to it as an interest because they mean the membership interest. And then in that sentence, it says you've got to get the other's consent. So it says without the affirmative vote of the other members holding at least 66 percent of the interest. What if you are a new admitted member, a fifth individual? Do you then need the vote of 66 percent? Yes, unless you are a permitted transferee as defined under the agreement, because the section six goes on to say, if the transfer is to a permitted transferee of an interest, the membership interest in a company, then you may receive your membership interest. That isn't exactly what I was thinking, because I was thinking that the additional member brought in new capital or brought in some new consideration. So you're talking about a formulation which revolves around the addition of capital or something, whereby possibly the percentages change. And Mr. Macris no longer has 50 percent of the company. He now has 48 percent of the company, or 45 percent. And this particular individual might have X amount of percentage, depending on how it's spread. Yes. You have a situation where you're talking about a transfer. Is this transfer of an interest the complete and utter interest, or is it a partial interest that goes from Macris? Does Macris have the authority to give 25 percent of his membership interest away, or does he have to give it all away? He can give. As the section six says, he may give part or all of his, her, or its interest to a permitted transferee. So as long as it's a permitted transferee, you can get a new member. That's right. And what's the difference between an unadmitted assignee and a permitted transferee? An unadmitted assignee can only get the distributional interest because they haven't been admitted. And that's a very important point, too, because this operating agreement makes a distinction between these unadmitted assignee and this permitted transferee. And one of our points at the trial court level was if the permitted transferee could not get a membership interest, there was no point to making that distinction between the unadmitted assignee and the permitted transferee. And so when you read section six, in essence, what the appellees will be asking this court to do, and in essence, I mean, it's literally what they're going to be asking you to do. They're going to be asking you to look at section six and put in place the word interest, not its defined term, but to put distributional interest on it. And if you read section six and you replace interest with distributional interest, which is not the definition of the operating agreement. Well, are they arguing that the assignment doesn't convey all the interests that Mr. Macris had, or are they complaining and suggesting that he did, in fact, transfer all he had? However, there is an additional condition, and that is that we have to vote on it. Well, I would say in answer to that, they're saying that the intent of George Macris as expressed in the assignment was to transfer everything, the whole interest. But I think they would say the effect, by virtue of the operating agreement, and they would say by virtue of the LLC Act, we'd say you don't have to look at the LLC Act, the agreement's clear. They would say the effect was only to transfer the distributional interest to G.M.A. Cater, who in effect was Vivian Macris, the late, the wife, the widow of George Macris. And our position is that it's utterly clear from the language contained within the operating agreement for a variety of reasons. Other reasons, with your permission, Justice, I'd like to address. Of course, if you have any questions, please stop me. Well, I do have one question before you. Maybe you cover this, but let me ask it. When you look at the definition of membership rights in the operational agreement, it includes all of the rights of a member in the company, including a member's, one, interest. And then there are several other things designated, including looking at the books. Why isn't that controlling? It's not controlling.  Yes, and I do understand the argument of why that definition is helpful to the appellee's position. But here is the problem with that position, Justice. That definition, unlike every other definition contained in the early parts of this operating agreement, is never used. And if you were to say that you have to use the term membership rights in order to transfer the membership rights, then that would make no sense, for example, at Section 6 of the operating agreement. Section 6 of the operating agreement is a section whereby it explains the mechanism for transfer of membership interest between the brothers. So if the brothers, the Snegos brothers, are transferring between themselves membership rights, and clearly that's the intent. These are the original owners transferring between one another. It talks about how the company may have an option. And nowhere does it use the term membership rights. Why? Because there's no intent that there be a need to use that language in order for there to be an allowed transfer of membership rights. Is that because they're already members? Right. Right. It is because they're already members. But if you were going to say that, for example, one Snegos could transfer to the other, why would you use the term, the very same term in the top of Section 6? Membership rights. Rights. Interest to be transferred. Snegos interest. The section doesn't use membership rights once. Nowhere is that term used. Where if the membership rights, I'll withdraw that. So is it correct to believe or conclude that the membership interest was transferred to GMAK, but it was ineffective because there was no vote? No. I don't think you could say that because. No, I'm saying is that what they're saying? Yes. We would respond to that by saying that that is sort of the general rule. But it is also the rule under the LLC Act and under the case law that the parties may adjust the terms by which they transfer an actual membership right. And in this particular case, the operating agreement created this exclusive club of permitted transferees. And they said, with regard to these people, you don't need a vote. And then they wrote in Section 6, and again, the parties agreed that my client is a permitted transferee under the terms of the operating agreement. And the term interest says, shall mean ownership interest of a member in the company. Then you go to Section 6, and it says, if a member transfers his or her interest to a permitted transferee, it is an allowed transfer pursuant to Section 6. It's an allowed transfer of what? The membership interest. Why is it the membership interest? Because it's defined as the interest shall mean the ownership interest of a member in the company. Ownership interest, not membership interest. Why isn't that controlling? Well, the alternative you're suggesting, Justice, is that what they really meant, and this is basically the equities position, is distributional interest. And if that's what they meant, I have to ask the question, why didn't they say it would be so simple? We would be out of business if people wrote clear contracts. What would be the difference between an unadmitted S&E and a permitted transferee if that was the appropriate definition or application? You've already said it. There is no difference. I think there is. Or put another way, it's a distinction without a difference. An unadmitted S&E is somebody who has received an interest, not who is not a permitted transferee, received an interest and necessarily will be distributional. Well, does it mean one of these two alternatives? If you're an unadmitted S&E, and there needs to be a vote, because supposedly this starts out with there's a vote, but there's an exception to the rule. If there's an unadmitted S&E, and there is a vote, and it's against the unadmitted S&E, does that then disqualify the unadmitted S&E, and they no longer have a distributional interest, and there is basically they have quashed and abrogated the assignment? I don't think that there could be a – I don't think they could stop a transfer of the distributional interest to an unadmitted transferee, because an unadmitted transferee can receive the distributional interest without the approval or, let's say, fail the attempt to get the approval of the other member. Well, if they can't disqualify that assignment, then what is the distinction between that assignment that they can't disqualify, but this assignment, which they can? The difference is, is that one is to a permitted transferee who has this status and has the right to take a membership interest without the votes of the other members. Are there any other questions? Thank you, sir. You'll have an opportunity to make rebuttal. Mr. O'Connell, you may proceed. Good morning, Your Honors. Good morning. Justice McClaren, let me start by answering the question as to whether or not there's a gap. That's a common reference when we talk about the difference between what an operating agreement provides under the LLC and what the LLC Act provides. There's a gap here. And if you take a look at Section 10-1 of the LLC Act, it says, a transferee of a membership interest, a transferee, that's GMAC, may be admitted as a member as provided in the operating agreement or the Articles of Organization. If neither the operating agreement or the Articles of Organization provide for admission of membership, then a member is allowed with unanimous consent of the other members. Here, the operating agreement did not provide for the circumstances under which a transferee of an interest, an economic interest, a property interest, could be admitted as a member. Therefore, we default or fill the gap in by looking at the Act. So what then does all of my membership interests mean in the assignment? Membership interest is an economic interest, a property interest, the percentage. If this were a corporation, we'd call it the shares. It's an LLC. We call it the interest, the percentage interest that one owns. It's what you own. Beyond what you own, beyond your economic or distributional interest, a member has certain rights. Those membership rights include but are not limited to the interest, the economic interest or the property interest, as defined in the operating agreement here. So transferring membership interest transfers the interest but not the rights. Is that what you're saying? That is exactly correct, Your Honor, because in order to transfer those membership rights, the other members must agree, which makes, if I can, that makes sense. If the other members have to agree but they also have to agree on an unadmitted assignment, you're telling me that what happens if there's an unadmitted assignment and they vote it down? Does that then mean that the assignment is bad, or does it mean that they only get one-half of the distributional shares? No. What it means is an unadmitted assignee, unadmitted to what? Membership. An unadmitted assignee who receives a distributional or property interest. It's the same thing as a permitted transferee in this case. GMAC was a permitted transferee. Hypothetically, if it had been requested of the other members to admit GMAC as a member and the other members had declined, they did not get unanimous consent, GMAC would still maintain its interest, its property interest. And what would an unadmitted assignee receive if they were voted down as well? Would they retain their same distributional interest? If an unadmitted assignee, that presupposes that that assignee is one of those that are excluded by the permitted transferees. If it's one of those that are excluded by permitted transferees, then it's not actually holding anything. It's not an assignee. It hasn't received anything. It hasn't even received a property interest. That's why I'm suggesting to the Court that unadmitted assignee, which presupposes you have received, lawfully received, an assignment of the interest, you then would be. You're telling me an unadmitted assignee is someone who is a preferred transferees or permitted transferee, but who really isn't a preferred transferee because it hasn't been assigned to them yet? No, Your Honor. What I'm saying is a permitted transferee, that is a defined term. Permitted transfers may occur without the consent of the other members. There are transfers that can occur with consent of the other members. So the members, an entity may not be a permitted transferee. It may not be a relative. It may be a friend. You're not a permitted transferee. However, the other members may approve of that transfer of the economic interest. They approve the transfer. They have not approved that individual being a member. You are then an unadmitted assignee. Unadmitted to membership, but you're holding a property interest by virtue of an assignment which has been approved by the other members. What if they vote against them? If they vote against them, as they would have the right to do, then you're not holding anything. They have denied the transfer from the member to the person or entity who does not qualify as a permitted transferee, but is someone's. So an unadmitted assignee who is voted down by the members don't have any interest? No, because the assignment hasn't occurred. The assignment or transfer hasn't been approved by the other members, which is required. So in that scenario, the assignment, if you will, hasn't occurred because it hasn't been approved. That third party, whomever it may be, is holding nothing because the other members, as they have the right to do, have denied that proposed assignment or transfer. So in 2002, when this operational agreement was written, there were four members. And based upon what we're hearing and reading, they never wanted any more than four. Is that correct? What they didn't want is they didn't want to have any new members be imposed upon them without everybody agreeing. So I think it was Justice McLaren that asked the example, what if the fifth person just decided to come in and everybody was going to give a little something to a fifth member because they needed to generate capital? If all of the members agreed, then, of course, you could have a fifth member. I don't think it needed to be all. It only needed to be two-thirds. Well, if you wanted to have them as a member, then it needs to be all. That's kind of back to the gap. And why is that? Is that because of the statute or because of the agreement? It's because the agreement doesn't provide for the circumstances under which a permitted transferee, our hypothetical fifth member, becomes a member. We look to the statute. The statute fills in the gap and says unanimous consent. But if there's a permitted transferee, there is no gap because this person is a transferee and supposedly is receiving something from one of the other members as opposed to getting a share made out of whole cloth. But they're not a member. They are a permitted transferee of an interest, which is part of a member's rights. It's the economic, the property, the distributional interest with a capital I. Yes, they may be a permitted transferee, but they are not a member. And this was a judgment on the pleadings, was it not? Correct. And so if there are two interpretations that are reasonable, judgment on the pleadings should not have been granted. But there weren't two interpretations. Well, I think my interpretation is just as reasonable as yours. And tell me where Your Honor differs with me. Normally when it says two-thirds and then it provides for an exception, normally the exception means you're excluding from the predicate phrase or predicate section the limitations that are placed upon the exception. And what you are doing is you're doing the exact opposite of that. You're applying the predicate on the exceptions, and then you're applying it again on another exception, which essentially makes an oxymoron term, which is an unadmitted assignee. Yeah, they're unadmitted, but they're not an assignee because they, quote, unquote, according to your understanding of the interpretation, there's no assignment because it wasn't approved. A permitted transferee only receives the question here is what does a permitted transferee receive? A permitted transferee receives an interest. An interest is but one of the membership rights, but it does not include all of the membership rights, particularly the rights to have a say-so in management, the rights to receive documents, et cetera. Generally assignment law, unless there's an exception to be noted, and I don't necessarily see the exception that is noted in the assignment is that when someone assigns their interest, they assign their entire interest, unless it's limited. And here it's limited, Your Honor. What Section 6 says is exceptional. No, no, no. We're not talking about what Section 6 says. We're talking about what the assignment says. But the assignment can't – the assignment from Mr. Macris to GMAC cannot violate the terms of the – cannot violate the terms of the operating agreement. How did it violate the terms of the operating agreement if supposedly he has the ability to transfer the membership interests and rights? He doesn't. Oh, he doesn't. He does not. He has the ability to transfer his interest, and his interest is defined as his ownership interest. His interest is not defined as his membership rights. He only has the ability to transfer his interest. That interest can be transferred to a permitted transferee without consent. He does not have the right to transfer his membership rights without every other member agreeing. Where in the body does it say that based upon the policy of this partnership that these four people and only these four people have managerial rights? Yes. That's what a member has. That's what membership rights are defined to be and to include. Yes, it does, Your Honor. But apparently it also says that when they transfer it to a permitted transferee, such as a trust, you know, like in case Mr. Macris might become incapacitated and he needs to have an estate made, that the trustee doesn't have the ability to supposedly manage his interests anymore because that's what was the intent of Mr. Macris. That once they supposedly take their hands off the throttle, the dead man switch doesn't stop the train. The train keeps going forward, but with three new engineers instead of four, or the three old engineers, and the fourth has just gone by the boards. That's absolutely correct, Your Honor, because the only thing that that member who wants to transfer has the ability to do without the other's approval is to transfer their economic interest, their property interest. That isn't diminished and that isn't abrogated by a transfer. Is there anything in that agreement that you believe, if there was proper verbiage such as membership rights, interests, title, emoluments, and anything that will stick on the wall is transferred to the proper transferee or the preferred transferee, whatever the hell it's called? Permitted transferee. Permitted transferee. Thank you. That it still wouldn't go through because it requires, you said, I think, well, maybe it didn't. I mean, unanimous or two-thirds vote of the parties? If it's a permitted transferee, you don't need anybody's approval but the person making the transfer. But it's only limited as to the interest, the member's interest that is transferred. It is not the membership rights. And that makes sense, Your Honor. These four individuals have the right. No, it's not a question of what makes sense. It's a question of your file of judgment, a motion for judgment on the pleadings, which means supposedly this document is supposed to speak so clearly that as a matter of law, it cannot only be interpreted in one way. It's the only way. And I'm suggesting to you that unless there's evidence establishing what you're trying to say, which is it's clear, it makes common sense and so on, it doesn't make common sense to me. Because you essentially said that none of these people, including the brothers, can't transfer their membership interests. They can't transfer their membership rights without the approval of the others. That's correct. And that's what the Act says. That's what the Act says, but that isn't what the agreement says because the agreement has an exception to the vote. No, but it doesn't, Your Honor. What it says is in Section 6 is that the members can transfer their interest with two-thirds vote. Interest is but one of membership rights. It is not all of the rights of membership. The only provision, there is no provision in this agreement, none whatsoever, that says a member may transfer membership rights to a permitted transferee. There's nothing that says under what circumstances a permitted transferee can become a member. That's finished, Bob. Come on. Can become a member. The only provision, the only provision that speaks to under what circumstances a transferee can become a member is the Act. Remember, Your Honor, we start with the Act, and then we can or cannot have an operating agreement. But the Act is what we start with. The LLC Act says unanimous consent. You can modify that in an operating agreement. But if you don't address it in an operating agreement, the Act governs, and the Act fills that gap, if you will. And I'll buy the argument that the gap might apply if somebody new came in and you would now have five instead of four people. But I don't buy the argument that, quote, unquote, the Act applies in this situation when you have language that says, except it may be transferred. Except it may be transferred where? There's no such language. To permitted transferees. There's no language in this agreement. I'm sorry, Your Honor, I didn't hear you. I was talking to you anyway. I said to permitted transferees. Permitted transferees can only receive the interest that is allowed to be transferred. That is the interest. It's a defined term, as is membership rights. Both interest and membership rights are defined terms. What purpose does a definition of membership rights serve, which includes as a component of an interest? It has to mean something. What it means is an interest is but one of a member's rights. So if I can understand your argument, that the only time any interest can be transferred from any of the four originals to anybody is if there's an approval by all the members. Not correct. No. No. A permitted transferee can receive, can be transferred an interest, as defined, without the consent of any of the members. That's the whole purpose of this special exception of transferees. Well, I thought you told me that an unadmitted assignee couldn't get any assignment unless they had the complete agreement of the parties, or at least two-thirds of the parties. Did you say unadmitted assignee? Yes. No. Well, if it's an unadmitted, all unadmitted assignee would mean is someone, a person or entity who has received an assignment who has not yet been admitted to membership. That unadmitted assignee could be a permitted transferee, or it could be a transferee who has been approved by the other members, entirely consistent with the agreement and the act. Can it be something as simple as membership does not automatically include being a member? Yes. And being a U.S. citizen doesn't automatically mean that you're a citizen. Well, he says his membership. I, I, I mean, I don't think that has to be the same. He says that you're an unadmitted assignee until such time as you're approved. Well, until such time as you're approved by the members, what are you? I didn't say that, Your Honor, respectfully. I didn't say that. What did you say? What I said was an unadmitted assignee, all right, unadmitted refers to admission of membership. So you're not a member. You haven't been admitted to membership. Nevertheless, you could be an assignee of a member's interest, either one as a member has to approve, because you qualify in that special exception. Or you could be a transferee holding a member's interest with approval of the other members. Justice Hutchinson, you asked me a question, and I. It's all right. And so if there is an assignee who doesn't fit within the permitted transferees, what happens to them if they are assigned rights and they pay consideration and then the members vote it down? Well, you're not going to pay consideration until you're approved. You have to be approved by two-thirds of the members. So I would assume what would happen, it would be proposed to the other members that member X would like to transfer a portion or all of his or its interest to one who does not qualify as a permitted transferee with 66 percent approval period. And so if they approve that individual and that individual was assigned all the rights and membership interests and everything else that came in that package, then would they be a preferred or would they just be an admitted assignee? Well, if they were approved by 100 percent of the other members, then they would be a member holding whatever membership interest they hold. If they were only approved if only the transfer of the interest was approved but not admission to membership, then you are an unadmitted assignee. Thank you, Your Honor. What? I was making an answer to that. Okay. Thank you. Mr. Selvey, you may proceed. I'll be brief. I would just ask, as you entertained Mr. O'Donnell's interpretation of this agreement, he is, again, basically saying that in that preamble to Section 6, that you would insert the term distributional interest for interest. And I would submit that if you do that, you will find that Section 6 has no purpose or simply doesn't make sense. Are you saying that if you make a distributional interest, as the judge found, and he found apparently because there was no approval, then there's no distinction between a preferred transaction and an unadmitted transaction? Because if supposedly the status of the assignment is, quote, unquote, the same and you need approval in both instances, what is the difference between the two? The difference between the two is that a permitted transferee, and it says this, doesn't need the approval. And it's as simple as that. And is that even my interpretation? No. My point is, if supposedly, according to what Mr. O'Connell has said, the only interest that was transferred was distributional. And if it was supposedly made to a preferred transferee, but it was conditioned on approval, and supposedly an unadmitted assignee was also given a distributional assignment, but they also had to be approved, what is the difference between the two distinctions? It's like, say, A is an unadmitted assignee, and if we approve, they will get their distributional share. But we have this special class of people called B, and if they fall into B, they get to pass the distributional share, quote, unquote, as a permitted user, but you still have to vote on it. So what is exactly the difference between A and B? Well, it has to be, the difference is, what is member's interest versus member's rights, right? If only, you know, it says member's interest is member's ownership interest. And, you know, there's another section of the statute I quote in my brief that points out that membership interest is in the banking act, and it makes reference to membership interest in the context of limitations on the transfer of a LLC. And they're not talking about distributional interest, they're talking about membership rights, if you will. And what term do they use? Membership interest. And if you read the agreement in its entirety, there's the same interpretation. And I would point out, if the Court finds that this agreement is ambiguous and can be looked at in two different ways, then extrinsic evidence is admissible. We think it's clearly, as we suggest it is, that it's, that as a matter of law, our interpretation is appropriate, and that's why we made a counter motion for, or a cross motion for judgment on the pleadings. But if you find that it is ambiguous, extrinsic evidence would be admitted. And in the record is extrinsic evidence that the very law firm that did not only the operating agreement but the assignment interpreted the agreement the same way that I have submitted to this Court. Thank you. Thank you. The case will be taken under advisement. This was the last case on the call. Court is adjourned.